UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                          :

IN RE SALOMON ANALYST METROMEDIA   :         02 Civ. 7966 (GEL)
LITIGATION                                   :
                                          :         **OPINION AND ORDER**
                                          :
-------------------------------------------------------------x

Frederic S. Fox, Donald R. Hall, Kaplan Fox &
Kilsheimer, LLP, New York, New York; Richard A.
Adams, Patton, Roberts, McWilliams & Capshaw,
Texarkana, Texas; Bradley E. Beckworth, Jeffrey J.
Angelovich, Susan Whatley, Nix, Patterson & Roach,
LLP, Daingerfield, Texas, <u>Lead Counsel and
Attorneys for Lead Plaintiffs and Proposed Class
Representatives</u>.

Robert B. McCaw, Peter K. Vigeland, Christopher
J. Meade, Wilmer, Cutler, Pickering, Hale & Dorr,
LLP, New York, New York, <u>for Defendants
Citigroup Inc., Citigroup Global Markets, Inc. (f/k/a
Salomon Smith Barney, Inc.), Citicorp USA, Inc.,
and Jack Grubman</u>.


GERARD E. LYNCH, <u>District Judge</u>:

       Plaintiffs move for certification of a class, appointment of class representatives, and

certification of class counsel in a lawsuit against defendants Citigroup, Inc., its divisions Citicorp

USA and Salomon Smith Barney ("SSB"), and its research analyst Jack Grubman. The motion

will be granted in part and denied in part.

**BACKGROUND**

       The underlying claims in this case involve allegations that defendants engaged in a

scheme to defraud purchasers and sellers of stock in Metromedia Fiber Network, Inc.

("Metromedia") by issuing materially misleading analyst reports. The purpose of the misleading

reports was allegedly to attract Metromedia's investment banking business for the investment banking division of SSB. This Court dismissed most of plaintiffs' claims in an Opinion and Order dated January 5, 2005. See In re Salomon Analyst Metromedia Litig., 373 F. Supp. 2d 235 (S.D.N.Y. 2005). The Court held, however, that with respect to certain research reports issued in 2001, the complaint pled fraud with sufficient particularity to withstand defendants' motion to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The surviving claims involve allegations that analyst reports issued between March 8 and July 25, 2001, contained false "Buy" recommendations and falsely expressed confidence that a $350 million credit facility from Citigroup USA would fully fund Metromedia's business plan, despite defendants' knowledge of material risks and restrictions regarding the credit facility. Further detail regarding the underlying claims can be found in the January 5, 2005, Opinion and Order.

Plaintiffs now seek certification of the following class pursuant to Federal Rule of Civil Procedure 23:

> All persons or entities who purchased or otherwise acquired securities of Metromedia from March 8, 2001 through July 25, 2001 (the "Class Period"), inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants; any director, officer, subsidiary, or affiliate of Salomon, Citicorp USA, Inc., and/or Citigroup; any entity in which any excluded person has a controlling interest; and their legal representatives, heirs, successors and assigns.

(P. Mem. in Support of Mot. for Class Certification ("P. Mem.") at 2.)

Plaintiffs also seek certification of the following putative class members as representatives of the class: lead plaintiff Peter Carolan; lead plaintiff Techgains Corporation, otherwise known as Techgains I; Techgains II, III, IV, and V; and the Technology Associates Management Company ("TAMC"), a venture capital firm that manages the various Techgains

funds.

Defendants oppose certification, arguing that Techgains I lacks standing, that the other proposed representatives are inadequate and atypical for purposes of Rule 23(a), and that plaintiffs have failed to show that common issues will predominate over individual issues for purposes of Rule 23(b).

## DISCUSSION

I.    Standard for Class Certification

Class certification is warranted only where the class and its proposed representatives meet the requirements both of Federal Rule of Civil Procedure 23(a)—generally referred to as numerosity, commonality, typicality, and adequacy—and of one of the subsections of Rule 23(b).  See Fed. R. Civ. P. 23; Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 225 (2d Cir. 2006).  Here, the only subsection of  Rule 23(b) on which plaintiffs rely is Rule 23(b)(3), which requires a finding that "common" questions of law or fact "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

As this Court has previously commented, the standard of proof in applying Rule 23 is not well established.  See DeMarco v. Robertson Stephens Inc., 228 F.R.D. 468, 470 (S.D.N.Y. 2005).  Indeed, the standard is arguably less clear now than when that case was decided.  See, e.g., Heerwagen, 435 F.3d at 232-33 (holding that in some circumstances a plaintiff must show that he or she has satisfied Rule 23(b)(3) by a preponderance of the evidence, while acknowledging that in other circumstances the court is prohibited from weighing the plaintiff's

evidence at all). Nevertheless, certain principles are consistently applied in this circuit. There is no question, for example, that despite the Second Circuit's generally liberal interpretation of Rule 23, see, e.g., Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 337 (S.D.N.Y. 2004), citing, inter alia, Korn v. Franchard Corp., 456 F.2d 1206, 1208-09 (2d Cir. 1972), district courts must "rigorous[ly] analy[ze]" whether the plaintiffs have satisfied each element of the Rule. Heerwagen, 435 F.3d at 225. Though this analysis may require courts to "'probe behind the pleadings'" to determine whether class certification is warranted, Robertson Stephens, 228 F.R.D. at 470, quoting General Telephone Co. v. Falcon, 457 U.S. 147, 160-61 (1982), courts generally must not assess the merits of plaintiffs' underlying claims on a Rule 23 motion, id.; nor should courts even weigh the competing evidence presented by the parties at the class certification stage where such weighing would result in an inappropriate consideration of the merits. See Heerwagen, 435 F.3d at 232-33.[1]

---

[1] There is substantial uncertainty and disagreement within the Circuit regarding whether district courts must accept as true the allegations of a complaint at the class certification stage. Compare Shelter v. Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978) ("[I]t is proper to accept the complaint allegations as true in a class certification motion."), Richards v. FleetBoston Financial Corp., – F.R.D. – , 04 Civ. 1638 (JCH), 2006 WL 860674, at *2 (D. Conn. Mar. 31, 2006) (stating that a district court at the class certification stage should accept as true the allegations in a complaint), Hilton v. Wright, 235 F.R.D. 40, 51 (N.D.N.Y. 2006) (same), Coco v. Inc. Village of Belle Terre, 233 F.R.D. 109, 113 (E.D.N.Y. 2005) (same), and In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 501 (S.D.N.Y. 1996) (same), with Fogarazzao v. Lehman Bros., Inc., 232 F.R.D. 176, 179 (S.D.N.Y. 2005) ("In ruling on class certification, a district court may not simply accept the allegations of plaintiffs' complaint as true."); In re Initial Pub. Offering Secs. Litig., 227 F.R.D. 65, 91 (S.D.N.Y. 2004) (arguing that Coopers & Lybrand v. Livesay, 437 U.S. 463 (1978) and Falcon, 456 U.S. 147, undermine the view that facts in a complaint must be accepted as true at the class certification stage). This Court has resisted the argument that complaint allegations must be accepted as true at the Rule 23 stage. See Robertson Stephens, 228 F.R.D. at 470 (noting that the Second Circuit requires plaintiffs to make "'some showing'" beyond the complaint). In any event, the issue need not be further discussed here, because regardless of whether this Court accepts the complaint's allegations as true, or accepts only undisputed allegations and allegations which are

Despite these limits on the court's inquiry, however, plaintiffs seeking class certification must, at a minimum, make "'some showing'" that the proposed class comports with Rule 23's requirements, <u>Robertson Stephens</u>, 228 F.R.D. at 470; <u>see</u> <u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 292 (2d Cir. 1999); <u>In re Nigeria Charter Flights Contract Litig.</u>, 233 F.R.D. 297, 301 (E.D.N.Y. 2006); <u>In re Initial Pub. Offering Secs. Litig.</u>, 227 F.R.D. 65, 92-93 (S.D.N.Y. 2004), and to the extent plaintiffs present evidence, they may not rely on evidence "so flawed that it would be inadmissible as a matter of law."  <u>In re Visa Check/Mastermoney Antitrust Litig.</u>, 280 F.3d 124, 135 (2d Cir. 2001).  In applying the "some showing" standard, district courts in this Circuit have considered "'expert opinions, evidence (by document, affidavit, live testimony, or otherwise), or the uncontested allegations of the complaint.'" <u>Robertson Stephens</u>, 228 F.R.D. at 470, quoting <u>In re Initial Pub. Offering Secs. Litig.</u>, 227 F.R.D. at 92-93.  Finally, in some circumstances — most importantly, where the Rule 23 question is analytically independent of any merits issues — the district court should apply a preponderance-of-the-evidence standard to Rule 23 questions.  <u>See</u> <u>Heerwagen</u>, 435 F.3d at 233; <u>see also</u> <u>infra</u> Part III.A.2.(b) (discussing further the <u>Heerwagen</u>, <u>Visa Check</u>, and <u>Caridad</u> standards as applied to Rule 23(b)(3)).

II.     <u>Rule 23(a) Requirements</u>

Though this Court has applied the "some showing" standard to Rule 23(a)'s requirements, <u>see</u> <u>Robertson Stephens</u>, 228 F.R.D. at 470-72, subsequent Second Circuit case law regarding other subsections of Rule 23 raises the possibility that it may be more appropriate

---

supported by evidence and by publicly available information of which this Court may take judicial notice, the ultimate result in this case will be the same.

to apply a preponderance-of-the-evidence standard, at least where Rule 23(a) issues do not overlap with the merits.  See Heerwagen, 435 F.3d at 232-33 (holding that a preponderance-of-the-evidence standard must be applied to Rule 23(b)(3) issues where such issues are sufficiently independent of the merits).  But see Nigeria Charter Flights, 233 F.R.D. at 301 (applying, post-Heerwagen, the "some showing" standard to Rule 23(a) issues).  Regardless of which standard applies to Rule 23(a) here, however, the Court finds that plaintiffs have satisfied the Rule with respect to Peter Carolan but have not satisfied the Rule with respect to the Techgains funds.

A.  Numerosity

To satisfy the numerosity requirement of Rule 23(a), plaintiffs must show that the class is "so numerous that joinder of all [class] members is impracticable."  Fed. R. Civ. P. 23(a); Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).  Numerosity is generally presumed when a class consists of forty or more members.  See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Citing Metromedia's public filing with the SEC and noting an average daily trading volume of over 11 million shares during the class period, plaintiffs argue that the number of class members "far exceeds the numerical range consistently found to satisfy the numerosity requirement of Rule 23."  (P. Mem. at 5.)  In light of the figures presented by plaintiffs and defendants' decision not to oppose certification on numerosity grounds, the Court finds that plaintiffs have satisfied the numerosity requirement.

B.  Commonality

Rule 23(a) also requires that the action raise an issue of law or fact common to the class. See Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001); Robertson Stephens, 228 F.R.D. at 471.  Commonality "does not mean that all issues must be identical as to

each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." <u>Bolanos v. Norwegian Cruise Lines Ltd.</u>, 212 F.R.D. 144, 153 (S.D.N.Y. 2002) (citation and internal quotation marks omitted). Here, a number of issues exist to form a "unifying thread" among the class members' claims. These issues include whether defendants published reports with material misrepresentations and omissions; whether defendants acted with scienter; and whether the alleged misrepresentations affected the market price of Metromedia during the class period. Defendants do not dispute certification on the grounds of commonality. In light of all the circumstances, therefore, the Court finds that plaintiffs have adequately shown commonality for purposes of Rule 23(a).

C. Typicality and Adequacy

Rule 23(a)'s typicality provision requires that the claims of the representative parties be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). While this inquiry is related to the commonality inquiry, "the commonality inquiry establishes the existence of a certifiable class," whereas "the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions." <u>In re Frontier Ins. Group, Inc. Secs. Litig.</u>, 172 F.R.D. 31, 41 (E.D.N.Y. 1997). Rule 23(a)'s adequacy provision requires that the class representative "possess the same interest and suffer the same injury as the class members." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 625-26 (1997). As many courts have observed, the issues of typicality and adequacy "'tend to merge'" because "'[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" <u>Caridad</u>, 191 F.3d at 291, quoting <u>Falcon</u>, 457 U.S. at 157 n. 13.

Typicality and adequacy may be defeated where the class representatives are "subject to unique defenses which threaten to become the focus of the litigation." Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990). However, "the mere existence of individualized factual questions" as to the claims of class representatives does not bar class certification. Id. Moreover, "[t]he rule barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit," In re Frontier Ins. Group, Inc. Secs. Litig., 172 F.R.D. at 41 (citation and internal quotation marks omitted), particularly where, as here, the primary "unique defense" alleged is reliance-related. See In re Indep. Energy Holdings PLC Secs. Litig., 210 F.R.D. 476, 481 (S.D.N.Y. 2002) ("While the extent of any non-reliance on [plaintiff's] part will certainly be a fact question to be decided at trial, it is unlikely to significantly shift the focus of the litigation to the detriment of the absent class members."); Dietrich v. Bauer, 192 F.R.D. 119, 125 (S.D.N.Y. 2000) ("[T]he existence of individual questions concerning reliance is generally insufficient to defeat certification."); see also In re Gaming Lottery Secs. Litig., 58 F. Supp. 2d 62, 72 (S.D.N.Y.1999) ("Because a person is ineligible to represent a class of securities purchasers only if he clearly did not rely upon either the misleading financials *or* on the integrity of the market price or information, [plaintiff] remains qualified to serve as a class representative." (citation and internal quotation marks omitted)). Indeed, "a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him [or her] that would not impact other class members." In re Frontier Ins. Group, Inc. Secs. Litig., 172 F.R.D. at 41 (alteration in original) (citation and internal quotation marks omitted).

(1) Techgains I

Defendants' strongest typicality- and adequacy-based challenge pertains to Techgains Corporation, otherwise known as Techgains I, which is one of five funds managed by Technology Associates Management Company ("TAMC"). (See Meade Dec. Ex. 21 at 55-56, Ex. 22 at 20.) Defendants argue that only Techgains I sought lead plaintiff status, and not the other funds managed by TAMC (Techgains II, III, IV and V). This position is clearly supported by Techgains' earlier submissions to the Court in connection with its motion for lead plaintiff status. (See D. Mem. Opposing Class Certification ("D. Mem.") at 20-21; Meade Dec. Ex. 2 at 1, Ex. 3 at 16, Ex. 4 at 16, Ex. 5 at 15-16, Ex. 6 at 4-7; see also id. Ex. 21 at 55-56, Ex. 22 at 20; Case Management Order No. 2, Mar. 23, 2003, at 2; Complaint ¶ 36.)[2] Because Techgains I did not purchase any Metromedia shares during the shortened class period, defendants argue that it is atypical, inadequate, and lacks standing. (D. Mem. 20-21; Meade Dec. Ex. 2; Hall Dec. Ex. J.) This position also finds strong support in the record. Both parties, for example, submitted a chart detailing purchases of Metromedia by the various Techgains funds. (Meade Dec. Ex. 2; Hall Dec. Ex. J.) The chart forms part of a sworn statement submitted by Techgains I as part of its application to serve as lead plaintiff. Though plaintiffs themselves emphasize in their class certification papers that this chart represents *all* the purchases and sales of Metromedia by *all* of

---

[2] In order to demonstrate that the other Techgains funds, as well as TAMC, moved for and were appointed lead plaintiff status, plaintiffs point to Dr. Ching's statement during his deposition that he used the term "Techgains" to refer to "all of the Techgains Funds." (P. Reply at 20 (citation and internal quotation marks omitted).) The Court is unable to find the alleged statement on the page plaintiffs cite. In any event, it is irrelevant. The question is not what Dr. Ching meant by "Techgains" during his deposition; the question is whether plaintiffs moved for appointment of any Techgains funds as lead plaintiffs other than Techgains I. Plaintiffs' submissions to the Court in connection with the lead plaintiff motion make clear that they did not.

the Techgains funds during the class period (P. Reply at 20), the chart does not show *any* purchase of Metromedia shares by Techgains I during that period. Moreover, in response to defendants' argument that Techgains I did not purchase shares during the class period, plaintiffs' reply brief baldly asserts that defendants are "incorrect" (P. Reply at 19) but does not provide any argument or cite any evidence that contradicts or undermines defendants' claim. Plaintiffs thus have failed to demonstrate that Techgains I is an adequate and typical class representative.

On its own review of the record, the Court has come across one unsworn document among defendants' exhibits which suggests that Techgains I did purchase shares during the class period. (Meade Dec. Ex. 6, Sub-exhibit B.) The document is a chart, originally submitted by Techgains I in connection with its motion for appointment as lead plaintiff, which sets forth the losses Techgains Corporation allegedly suffered by investing in Metromedia. The chart lists three purchases of Metromedia stock by Techgains Corporation during the class period. Under the circumstances, however, this unsworn document — on which plaintiffs do not rely — does not entitle Techgains I to a finding of adequacy and typicality, primarily because the chart contradicts the document on which plaintiffs *do* rely — namely, the sworn document which shows all purchases of Metromedia shares by Techgains funds and TAMC but which shows no purchases by Techgains I during the class period. It is *plaintiffs'* burden to demonstrate adequacy and typicality. <u>Caridad</u>, 191 F.3d at 291. If plaintiffs (1) emphasize evidence that fatally undermines their claims and (2) fail to provide any meaningful reply to defendants' argument that Techgains I did not purchase shares during the class period, then plaintiffs have failed to meet their burden, and their motion to certify Techgains I as a representative will not be saved by the fact that a single unsworn document on which they do not rely could be read as

supporting their arguments. At most, the document found among defendants' exhibits suggests that Techgains I *might* have purchased shares during the class period, despite the contradictory evidence submitted by both parties, and that Techgains I *might* be an adequate and typical representative. This is insufficient under either a "some showing" or a preponderance-of-the-evidence standard.

The Court will not, however, dismiss Techgains I's claims altogether for lack of standing. Though it is clear that plaintiffs have not met their burden of showing Techgains I's typicality and adequacy, the slight ambiguity in the record makes it inappropriate to conclude definitively that Techgains I lacks standing to pursue its claims. However, if evidence submitted at a later stage in the litigation provides further confirmation that Techgains I purchased no shares during the class period, the Court will dismiss Techgains I's claims, either sua sponte or on a motion by defendants.

(2) TAMC and the additional Techgains funds

The Court also holds that TAMC and the other Techgains funds (i.e. Techgains II, III, IV, and V) may not serve as class representatives. This conclusion, however, is not based on the mere fact that they are not lead or named plaintiffs. See Noble, 224 F.R.D. at 343 n.97 ("It is certainly rare for a class representative to be an individual other than a named plaintiff. . . . But defendants have not identified, nor has a review of the case law revealed, a requirement that class representatives must sue individually."); In re Telectronics Pacing Sys., Inc., 172 F.R.D. 271, 283 (S.D. Ohio 1997) ("While it seems unusual that a class representative has not sued individually, the Court finds no requirement in Rule 23 that they do so."); see also Hevesi v. Citigroup Inc., 366 F.3d 70, 83 (2d Cir. 2004); In re Oxford Health Plans, Inc., 191 F.R.D. 369,

380-81 (S.D.N.Y.2000). Rather, TAMC and Techgains' funds may not serve as class

representatives because plaintiffs never properly moved for their appointment. On the contrary,

plaintiffs' opening brief in support of class certification states that plaintiffs "seek appointment

of . . . *Lead Plaintiffs Techgains Corporation* [that is, Techgains I] and Peter Carolan as Class

Representatives." (P. Mem. at 2 (emphasis added).) Plaintiffs only argued for inclusion of

TAMC and the other Techgains funds as class representatives in their reply brief (P. Reply at

20), that is, after defendants had pointed out that Techgains I was not a proper representative. It

is inappropriate to allow plaintiffs to move for appointment of new representatives in a reply

brief, in part because defendants have not been given an adequate opportunity to respond. Cf.

Phoenix Aktiengesellschaft v. Ecoplas, Inc., 391 F.3d 433, 438 n.4 (2d Cir. 2004) (refusing to

consider arguments raised for the first time in a reply brief).[3]

            (3) Peter Carolan

     The rejection of the Techgains funds and TAMC as class representatives does not doom

the certification motion, because Peter Carolan satisfies the requirements of typicality and

adequacy. None of defendants' challenges to Carolan have merit.

     Defendants argue, for example, that because Carolan is a sophisticated investor, he

presents individual issues of reliance that defeat typicality and adequacy. As this Court

explained in Robertson Stephens, however, an investor's "sophistication and the particulars of

his investment strategy do not suffice to render him inadequate or atypical of the class. Courts in

this circuit have repeatedly rejected claims that the presence of different types of investors within

---

[3] Techgains IV is an inadequate and atypical representative for the additional reason that
it did not purchase shares during the class period. (See Meade Dec. Ex. 2; Hall Dec. Ex. J.)

a plaintiff class can defeat the Rule 23(a) requirements." 228 F.R.D. at 471, citing In re WorldCom, Inc. Secs. Litig., 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003); see also Cross v. 21st Century Holding Co., 00 Civ. 4333 (MBM), 2004 WL 307306, at *3 (S.D.N.Y. Feb. 18, 2004) ("[P]laintiffs here have based their claims on the fraud-on-the-market theory, and . . . there is no indication that [class representative] Cross'[s] sophistication means that his claim arises any less from the same course of events and raises the same legal liabilities as every other member of the putative class."). Moreover, the notion that a representative's sophistication should count against him would be in tension with the principle that sophisticated institutional investors are better suited to control large securities class action litigation. Cf. Glauser v. EVCI Ctr. Colleges Holding Corp., – F.R.D. – , 05 Civ. 10240 (CM), 2006 WL 1302265, at *3 (S.D.N.Y. May 9, 2006) (noting that a lead plaintiff "experienced in securities class action litigation" was "precisely the type of sophisticated institutional investor that Congress and this Court have recognized as being ideally suited to control this type of securities class action litigation").[4]

The fact that Carolan purchased shares of Metromedia after the class period (see Meade Dec. Ex. 19) — and, more importantly, after defendants' disclosure of information that corrected the alleged misrepresentations forming the basis of the complaint — presents a more difficult

---

[4] The parties dispute whether Carolan engaged in "averaging," a sophisticated investment technique which, according to defendants, would render him atypical and inadequate as a representative. Even assuming that Carolan did engage in some averaging, the Court has no reason to believe that any individualized issues arising from such investment practices would threaten to become the focus of the litigation such that certification is inappropriate. See Cosmas v. DelGiorno, 94 Civ. 1974 (ILG), 1995 WL 62598, at *4 (E.D.N.Y. Feb. 8, 1995) ("The courts have recognized that the use of ['averaging down'] does not create an atypical defense, or rebut the presumption of reliance in determining whether a class should be certified."); see also Arakis Energy Corp. Secs. Litig., 95 Civ. 3431 (ARR), 1999 WL 1021819, at *12 (E.D.N.Y. Apr. 27, 1999).

issue.  There is disagreement among the courts regarding whether additional purchases of a company's stock by a putative class representative after the public correction of alleged misrepresentations defeats typicality by raising individualized issues of reliance.  See, e.g., Feder v. Electronic Data Sys. Corp., 429 F.3d 125, 137-38 & n.9 (5th Cir. 2005) (discussing disagreement among courts on the issue of whether purchases after disclosure of fraud defeat typicality, and noting that the "generally accepted" view is that typicality is not defeated in such circumstances); see also Rosen v. Textron, Inc., 369 F. Supp. 2d 204, 208-09 (D.R.I. 2005) (collecting cases on both sides of the issue).  Having considered the issue, this Court concludes that Carolan's post-disclosure purchases do not defeat typicality or adequacy for purposes of Rule 23(a).

Carolan seeks to argue that he, like other class members, relied on the integrity of the market in purchasing shares during the class period.  As numerous courts have held, the fact that a putative class representative purchased additional shares in reliance on the integrity of the market *after* the disclosure of corrective information has "no bearing on whether or not [the representative] relied on the integrity of the market during the class period," that is, *before* the information at issue was corrected or changed.  In re Frontier Ins. Group, Inc., 172 F.R.D. at 42, citing Kronfeld v. Trans World Airlines, Inc., 104 F.R.D. 50, 53 n.4 (S.D.N.Y. 1984), and Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397, 1404 (D. Conn. 1988).  In other words, the fact that an investor purchased additional shares upon learning the new information does not mean that he or she did not rely on the integrity of the market in purchasing shares before the new information was known.  The "post-disclosure" purchase of the additional shares therefore will not necessarily present individual issues of reliance that render the investor atypical or

inadequate to represent class members who did not purchase such additional shares. See also Feder, 429 F.3d at 138 ("Reliance on the integrity of the market prior to disclosure of alleged fraud (i.e. during the class period) is unlikely to be defeated by post-disclosure reliance on the integrity of the market. This seems particularly so after the stock price has been 'corrected' by the market's assimilation of the new information."); Lehocky v. Tidel Techs., Inc., 220 F.R.D. 491, 501-02 (S.D. Tex. 2004) ("[C]ourts have ruled that purchases of stock by the class representatives after negative announcements during the class period or even after the close of the class period do not destroy typicality."); In re Rent-Way Secs. Litig., 218 F.R.D. 101, 114 (W.D. Pa. 2003) (concluding that the fact that a proposed class representative purchased shares after the disclosure of accounting irregularities, and indeed after the representative had become a plaintiff, was "irrelevant" and did not defeat typicality); In re Nortel Networks Corp. Secs. Litig., 01 Civ. 1855 (RMB), 2003 WL 22077464, at *3 & n.4 (S.D.N.Y. Sept. 8, 2003) (finding typicality requirement satisfied despite defendants' argument that the purchase of stock "well after the alleged fraud was exposed militate[d] against typicality" (citation and internal quotation marks omitted)).[5]

---

[5] Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176 (2d Cir. 1990), is not to the contrary. In Gary Plastic, the Court of Appeals affirmed a ruling by Judge Haight that denied class certification based on, inter alia, the fact that plaintiffs had made additional purchases after "having notice of, and having investigated, the alleged fraud." Id. at 179. The Second Circuit's holding, however, was merely that on the facts of that case, Judge Haight had not *abused his discretion* in concluding that the post-disclosure purchases created unique defenses defeating the proposed representative's adequacy. Id. at 180. The facts of that case were not similar to the facts here; the district court in Gary Plastic noted, for example, that a family relationship between the Merrill Lynch broker and the officers controlling the plaintiff company "furnish[ed] a significant increment to the unique defense factor" that undermined plaintiff's adequacy for purposes of Rule 23(a). Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 119 F.R.D. 344, 349 (S.D.N.Y. 1988).

The specific facts of this case make it especially appropriate to conclude that Carolan's post-disclosure purchases do not present the sort of individualized reliance issues that would become the "focus of the litigation" to the detriment of the class. Gary Plastic Packaging Corp., 903 F.2d at 180. Unlike many of the cases in which courts concluded that post-disclosure purchases rendered a representative atypical or inadequate, the putative representative here did not purchase additional shares after the disclosure of *fraud*, but rather after the revelation of new, unfortunate developments that did not, at that point, put him on notice of fraud. Compare, e.g., In re Safeguard Scientifics, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (finding a plaintiff inadequate where defendants had shown that he bought additional shares "even after public disclosure of the alleged *fraud*" (emphasis added)). When an investor purchases stock even after learning that issuers and/or analysts have been distorting market information so as to inflate the stock's value, it may be reasonable to infer that the investor was not relying heavily on the integrity of the price in the first place, and that the investor may therefore present individual reliance issues that could overwhelm the litigation.[6]

Such an inference is distinctly less powerful, however, where the "disclosure" after which an investor continues to purchase stocks is not the disclosure of fraud or misrepresentations, but instead the mere disclosure of new developments and data which, while negative, do not suggest that previously available information was distorted. In this latter circumstance, unlike in the circumstance where an investor purchases stock after the disclosure of fraud, the "post-disclosure" purchases do not in any way imply that the investor is indifferent

---

[6] As noted above, of course, the inference is hardly inevitable. An investor may simply believe that despite the earlier fraud, the security is now priced appropriately.

to a stock price's integrity or to inaccuracies in market information.  There is less of a probability, therefore, that reliance-related defenses unique to that investor will overwhelm the trial and render him or her atypical or inadequate for purposes of Rule 23(a).  See In re Dynegy, Inc. Secs. Litig., 226 F.R.D. 263, 276-77 (S.D. Tex. 2005) (holding that purchase of additional shares by lead plaintiff after defendants had issued corrective information was "not likely to subject [the lead plaintiff] to a unique defense" because the post-disclosure purchases occurred *before* plaintiffs were put on inquiry notice of fraud).

That is precisely the situation here.  Though Carolan continued to purchase shares after defendants issued a report on July 25, 2001 — a report which downgraded Metromedia to "Neutral" due to delays in closing the $350 million facility and a lack of "visibility" on the company's financing (Vigeland Dec. Supporting Mot. to Dismiss Ex. 34) — there is no allegation that Carolan purchased shares after being on notice that defendants may have fraudulently distorted market information.  See In re Salomon Analyst Metromedia Litig., 373 F. Supp. 2d at 240 (holding that "plaintiffs could not have reasonably been on notice of [their] claims prior to the publication of the results of various government investigations into SSB and Grubman in the summer of 2002").  Thus, there is little basis for an inference that Carolan was indifferent to the accuracy of market information or to the integrity of prices in making investment decisions, or that individual issues of reliance would therefore render him an atypical or inadequate representative.

III.   Rule 23(b) Requirements

    A.  The Predominance of Common Issues

Under Rule 23(b)(3), a court may certify a class only if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and only if "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); see Robertson Stephens, 228 F.R.D. at 472.  Here, there is no question that common questions of law and fact predominate with respect to most elements of plaintiffs' securities fraud claims.  It is beyond dispute, for example, that in determining whether defendants made false representations or omitted material facts, with scienter, and in connection with the purchase or sale of securities, see Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005) (describing elements of a securities fraud claim), common issues will predominate over individual ones.  Defendants argue, however, that individual questions will predominate over common questions with respect to whether each member of the proposed class relied on defendants' alleged misrepresentations.  See id. at 341 (noting that "reliance" is a "basic element[]" of a securities fraud claim (emphasis omitted)).

Plaintiffs present two alternative arguments to defendants' reliance-based challenge to class certification under Rule 23(b).  First, plaintiffs argue that because this case primarily involves omissions, they are relieved altogether of the obligation to prove reliance.  See Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153 (1972).  In the alternative, plaintiffs argue that even if reliance is an element of their claim, reliance by all class members may be presumed under the doctrine of Basic Inc. v. Levinson, 485 U.S. 224 (1988).  The Court rejects the former argument but accepts the latter.

1.  The <u>Affiliated Ute</u> Exception

Plaintiffs' argument that they are exempt from the requirement that they prove reliance is based on the Supreme Court's decision in <u>Affiliated Ute</u>.  <u>Affiliated Ute</u> held that in securities fraud cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery."  406 U.S. at 153.  Rather, the Court held, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [his or her] decision."  <u>Id</u>. at 153-54.  As numerous courts have explained, however, distinguishing between omissions and failure to disclose, on the one hand, and affirmative misstatements, on the other hand, is no simple task.  <u>See</u>, <u>e.g.</u>, <u>Wilson v. Comtech Telecommc'ns Corp.</u>, 648 F.2d 88, 93 (2d Cir. 1981).  "In many instances," for example, "an omission to state a material fact relates back to an earlier statement, and if it is reasonable to think that that prior statement still stands, then the omission may also be termed a misrepresentation."  <u>Id</u>.; <u>see also</u> <u>Johnston v. HBO Film Mgmt., Inc.</u>, 265 F.3d 178, 193 (3d Cir. 2001) ("[E]very misstatement both advances false information and omits truthful information.  Statements which are technically true may be so incomplete as to be misleading (e.g., half-truths or distortions)," quoting <u>Joseph v. Wiles</u>, 223 F.3d 1155, 1162-63 (10th Cir. 2000); <u>Titan Pharms. & Nutrition, Inc. v. Medicine Shoppe Internat'l, Inc.</u>, 05 Civ. 10580 (SAS), 2006 WL 708552, *2 (S.D.N.Y. March 20, 2006)  ("To some extent, every fraud case is an omissions case, because every misleading statement omits the truth.").

Thus, in determining whether a claim involves primarily a failure to disclose for purposes of the <u>Affiliated Ute</u> exception, "[w]hat is important is to understand the rationale for a presumption of causation in fact in cases like <u>Affiliated Ute</u>, in which no positive statements

19

exist: reliance as a practical matter is impossible to prove." Wilson, 648 F.2d at 93; see duPont v. Brady, 828 F.2d 75, 78 (2d Cir. 1987) ("'[I]n instances of total non-disclosure, . . . it is of course impossible to demonstrate reliance'" (omission in original), quoting Titan Group, Inc. v. Faggen, 513 F.2d 234, 239 (2d Cir. 1975)); cf. Basic, 485 U.S. at 245 ("Requiring a plaintiff to show . . . how he would have acted if omitted material information had been disclosed . . . would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff . . . ."). Where positive statements form a central part of the alleged fraud such that the evidentiary problems inherent in proving reliance on a non-disclosure are not present, the Affiliated Ute exception does not apply. See, e.g., Zuckerman v. Harnischfeger Corp., 591 F. Supp. 112, 121 (S.D.N.Y 1984) ("No such impossibility [of proving reliance] exists here. Positive statements do exist and plaintiff cannot escape the obligation of pleading reliance on those assertions he alleges were fraudulent."). Thus, for example, where a plaintiff who relies heavily on allegedly misleading statements objects to omissions primarily because they "exacerbated the misleading nature of the affirmative statements," Affiliated Ute will not apply. Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc., 412 F.3d 103, 109 n.5 (2d Cir. 2005).

The surviving claims in the instant case pertain to alleged material misrepresentations "as to the statements about the Citicorp USA credit facility and Metromedia's funding position in reports issued between March 8, 2001, and July 25, 2001." In re Salomon Analyst Metromedia Litig,, 373 F. Supp. 2d at 240. A review of the complaint makes clear that the relevant allegations do not present a case "involving primarily a failure to disclose" such that plaintiffs, were they subject to Rule 10b-5's standard reliance requirement, would be in the difficult position of proving reliance on a mere non-disclosure. On the contrary, the complaint is rife

with allegations of affirmative misstatements that do not on their face suggest any of the

evidentiary problems with which the Supreme Court was concerned in <u>Affiliated Ute</u>.  (<u>See</u>, <u>e.g.</u>,

Complaint ¶¶ 92, 98, 108, 109, 110, 114, 117, 125, 140.) [7]

---

[7]  The complaint alleges, for example:

> Defendants falsely stated [in their March 8, 2001, Research Note,] that '[Metromedia] has obtained a commitment for a fully underwritten credit facility for $350 million from Citigroup[] USA, Inc., which it expects will fully fund its current business plan . . . .
> . . . Despite knowledge of these facts [related to the credit facility's risks and restrictions], Defendants continued to tout that the credit facility was a done deal for $350 million and that [Metromedia]'s business plan was fully funded and in no danger of bankruptcy. . . .
> . . . Defendants issued a report in which they reiterated their 'Buy' rating for [Metromedia].  Defendants also expressly stated that the credit facility was fully funded for $350 million and that it would fully fund [Metromedia]'s business plan.  Defendants knew these statements were false and omitted the material facts . . . that the credit facility was not worth $350 million, CUSA/SSB had only committed $75 million, the credit facility would not close on time, and even $350 million would not fully fund [Metromedia]. . . .
> On March 12, 2001, Defendants issued a report to reaffirm 2001 guidance and reiterated its 'Buy' rating on [Metromedia] on March 12 and 13, 2001.  Defendants omitted . . . material facts . . . .
> . . . Defendants went on to say [in a March 21, 2001, Report] that, of all the companies covered in the Report, only two companies (Global Crossing and Winstar) did not have fully-funded business plans. . . .
> . . . SSB and Grubman issued a Note . . . . on April 30, 2001, stating, "We want to make it very clear that [Metromedia] remains one of our favorite names' [and further stating,] '[Metromedia] has obtained a commitment for a fully underwritten credit facility for $350 million from Citicorp USA, Inc., which it expects will fully fund its current business plan . . . ."
> . . . [I]n a June 6, 2001, Note, . . . Grubman [stated]: "We strongly reiterate our Buy . . . and we would be aggressive at current prices. . . . We continue to believe the $350 million bank loan, which will bring [Metromedia] to fully-funded status, will close by the end of June. . . . [Metromedia] has a business plan that is fully funded . . . ."

Of course, the complaint also alleges omissions.  Indeed, many of the affirmative statements were rendered misleading, according to the complaint, precisely because they omitted critical information regarding risks and restrictions on the credit facility, as well as information regarding the relationship of defendants to Metromedia.  (See, e.g., id. ¶¶ 92, 98, 108, 109, 110, 114, 117.)  But, as noted above, affirmative misleading statements always omit *something*; namely, they omit the information that would correct or mitigate their misleading nature and thereby render the statements true.  Here, because positive misstatements form the primary basis of the surviving claims, and because plaintiffs' "principal objection to the omissions . . . is that the[y] exacerbated the misleading nature of the affirmative statements," Starr, 412 F.3d at 109 n.5, the evidentiary problem of proving reliance on a mere non-disclosure is simply not present, and the Affiliated Ute exception does not apply.  See Wilson, 648 F.2d at 93; Zuckerman, 591 F. Supp. at 121.

2.  The Applicability of Basic Inc. v. Levinson

(a)  The presumption established by Basic Inc. v. Levinson

Though the Affiliated Ute exception does not apply, plaintiffs may establish the existence of common issues of reliance, and thereby satisfy Rule 23(b), if they make "'some showing,'" Robertson Stephens, 228 F.R.D. at 470, that the alleged misstatements (and omissions) forming the basis of their complaint were "public material misrepresentations" about a stock traded on an "open and developed securities market."  Basic, 485 U.S. at 241, 247 (citation and internal quotation marks omitted).  This is because, under the doctrine of Basic, 485 U.S. at 241-49,

_____

(Complaint ¶¶ 92, 98, 108, 109, 110, 114, 117, 125, 140 (emphasis omitted).)

investors' reliance on such public material misstatements may be presumed. In <u>Robertson Stephens</u>, 228 F.R.D. at 472, this Court explained:

> [<u>Basic v. Levinson</u>] recognized that "Rule 10b-5's reliance requirement must encompass" the economic realities of modern securities markets . . . . The [Supreme] Court acknowledged that, rather than requiring proof of individual direct reliance in a securities fraud action, a district court could properly 'apply a rebuttable presumption of reliance, supported in part by the fraud-on-the-market theory," which the Court defined as "the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements."
>
> The presumption thus established is that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action."

<u>Id</u>. (last alteration in original) (citations omitted). Thus, if plaintiffs make an adequate showing that the <u>Basic</u> presumption of reliance applies, plaintiffs will be entitled to a presumption that all class members relied on the alleged misrepresentations and that common issues of reliance predominate over individual issues for purposes of Rule 23(b).

There is some controversy within this Circuit regarding <u>Basic</u>'s applicability to statements made by research analysts, as opposed to statements by issuers. <u>See</u>, <u>e.g.</u>, <u>Hevesi v. Citigroup, Inc.</u>, 366 F.3d 70, 78-80 (2d Cir. 2004); <u>DeMarco v. Lehman Bros.</u>, 22 F.R.D. 243, 245-47 (S.D.N.Y. 2004). As the parties note, however, this Court has already thoroughly considered the issue, and has specifically "decline[d] to adopt a higher standard at class certification for plaintiffs alleging securities fraud by research analysts and their employers." <u>Roberston Stephens</u>, 228 F.R.D. at 474; <u>see</u> <u>also</u> <u>id</u>. ("Nothing in the language of <u>Basic</u> limits its

holding to issuer statements alone.").  The Court will not re-visit that issue here.[8]

(b) Plaintiffs' burden under <u>Heerwagen</u>, <u>Visa Check</u>, and <u>Caridad</u>

In light of arguments set forth in defendants' brief and subsequent correspondence with the Court regarding the standards to apply in deciding whether common issues of reliance predominate, it will be useful to discuss in more depth the nature of those standards.

After the decision in <u>Heerwagen</u>, defendants submitted a letter to the Court arguing that the Second Circuit now requires a plaintiff to "establish by a *preponderance of the evidence* that the predominance requirement of Rule 23 has been met."  (D. Letter of 1/19/2006 at 2.) Although plaintiffs submitted a letter agreeing that the preponderance standard governed (P. Letter of 1/27/2006 at 3), the issue is not quite so simple.  In <u>Heerwagen</u>, the Court of Appeals held only that *where the predominance inquiry is distinct from the merits question*, district courts should require a plaintiff to show predominance by a preponderance of the evidence.  <u>See</u> <u>Heerwagen</u>, 435 F.3d at 233.  The court re-affirmed the rule established by <u>Caridad</u>, however, which "prohibit[s] weighing evidence in connection with Rule 23 determinations to the extent

---

[8]  Citing <u>Hevesi</u>, 366 F.3d 70 (2d Cir. 2004), as well as a more recent order in <u>Miles v. Merrill Lynch & Co.</u>, 04-8026 (2d Cir. June 30, 2005), defendants argue that "the Second Circuit is concerned about the liberal expansion of the fraud-on-the-market presumption to non-issuers" (D. Mem. 10-11), and that this Court should therefore reconsider its <u>Robertson Stephens</u> decision.  In both <u>Hevesi</u> and <u>Miles</u>, the court granted a petition for an interlocutory appeal under Federal Rule of Civil Procedure 23(f), in order to consider, inter alia, <u>Basic</u>'s applicability to non-issuer statements.  Neither <u>Hevesi</u> nor <u>Miles</u>, however, contains any language—much less a holding—that undermines this Court's analysis in <u>Robertson Stephens</u>.  <u>See</u>, <u>e.g.</u>, <u>Robertson Stephens</u>, 228 F.R.D. at 473 (noting that the <u>Hevesi</u> court "expressly declined . . . to 'decide what evidentiary showing, if any, the plaintiffs must make at the class certification stage in order to benefit from the <u>Basic</u> presumption in an action against research analysts and their employers,'" quoting <u>Hevesi</u>, 366 F.3d at 79).

24

those determinations are effectively identical to merits issues." Id. at 232.[9] Here, the question of whether Basic applies is "effectively identical" to several merits questions—most importantly, it is identical to the question of reliance. Thus, it would be impossible to apply a preponderance-of-the-evidence standard without weighing merits-related evidence, something the Court clearly may not do. Heerwagen therefore does not apply, and this Court will apply the "some showing" standard. See also Poddar v. State Bank of India, No. 98 Civ. 1691 (MGC), 2006 WL 1650617, at *1 (S.D.N.Y. June 14, 2006) (applying, post-Heerwagen, the "some showing" standard to Rule 23).[10]

---

[9] Heerwagen's holding that the predominance inquiry may in some cases be independent of merits issues is arguably inconsistent with prior Second Circuit case law. See Shelter v. Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 660 (2d Cir. 1978) ("This Court has repeatedly held that the predominancy question is not an issue capable of separation from the merits.").

[10] Some of Heerwagen's language may suggest, on first view, that the preponderance-of-the-evidence standard applies to all Rule 23(b)(3) determinations. See, e.g., Heerwagen, 435 F.3d at 233 ("Complying with Rule 23(b)(3)'s predominance requirement cannot be shown by less than a preponderance of the evidence."). Read as a whole, however, the court's opinion cannot reasonably be so interpreted. For example, Heerwagen's re-affirmation of the rule that courts must not weigh evidence in connection with Rule 23 determinations where the Rule 23 issues are effectively identical to merits issues would be difficult, if not impossible, to square with a rule that courts must apply a preponderance-of-the-evidence standard to all Rule 23(b) questions. See In re Initial Pub. Offering Secs. Litig., 227 F.R.D. 65, 93 (S.D.N.Y. 2004) ("If a district court is forbidden to weigh the evidence on class certification, *a fortiori*, plaintiffs need not establish the elements of Rule 23 by a preponderance of the evidence."); cf. Haltmier v. Commodity Futures Trading Comm'n, 554 F.2d 556, 560 (2d Cir. 1977) ("The 'weight of evidence' means 'the preponderance' or 'greater weight of the evidence' . . . ."). In concluding its discussion of this issue in Heerwagen, moreover, the Second Circuit made clear that its holding was limited to the circumstances present in that case. See Heerwagen, 435 F.3d at 233 ("*Because the predominance inquiry here is sufficiently independent of the merits to justify weighing the evidence*, we do not think the district erred in requiring Heerwagen to show predominance . . . by a preponderance of the evidence." (emphasis added)).

Relying on Caridad and Visa Check, defendants further argue that Second Circuit precedent requires plaintiffs to put forth "evidence" at the Rule 23 stage, and that courts must conduct a "rigorous analysis" of that evidence. (D. Mem. 11-20.) Defendants claim that plaintiffs' evidence fails this rigorous analysis; defendants also suggest that plaintiffs' showing is inadequate because it relies "almost exclusively on *allegations* in the Complaint, which are clearly insufficient." (D. Mem. at 15.)

Defendants' articulation of the Caridad and Visa Check standard may overstate the extent to which this Court must test plaintiffs' evidence at the class certification stage. Visa Check and Caridad did not state, as defendants claim, that district courts "must conduct a rigorous analysis to test [plaintiffs'] evidence." (D. Mem. 12 (emphasis, citation, and internal quotation marks omitted).) Rather, the Court of Appeals held that courts "must conduct a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied," and that as part of this analysis, courts must ensure that any evidence on which plaintiffs rely "is not so flawed that it would be inadmissible as a matter of law." Visa Check, 280 F.3d at 135 (citation and internal quotation marks omitted); see Caridad, 191 F.3d at 291-93. The Second Circuit emphasized, moreover, that the district court's analysis, while rigorous, should not involve even a "'preliminary inquiry into the merits of a suit,'" id. at 291, quoting Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974); see also Visa Check, 280 F.3d at 135; nor should the court's analysis resolve "whether [plaintiffs'] evidence will ultimately be persuasive," id. To the extent defendants' slight re-phrasing of the "rigorous analysis" language from Visa Check and Caridad is an attempt to have this court preliminarily address the merits or to determine whether the evidence relating to the merits will ultimately be persuasive to the finder of fact, defendants' articulation of the Visa

<u>Check</u>/<u>Caridad</u> standard is rejected.

Moreover, <u>Visa Check</u> and <u>Caridad</u> differ significantly from the instant case, in that the plaintiffs in those cases did not have the benefit of a presumption, and were therefore required, as a practical matter, to present more evidence than is necessary in the instant case to satisfy Rule 23(b) with respect to the reliance element of plaintiffs' claims. In <u>Caridad</u>, for example, plaintiffs had to make "some showing that the challenged [employment] practice [was] causally related to a pattern of disparate treatment or [had] a disparate impact on African-American employees" working for the defendant. 191 F.3d at 292. In <u>Visa Check</u>, plaintiffs had to make some showing that each element of an antitrust case could be proved on a class-wide basis. 280 F.3d at 136-40. Here, in contrast, with respect to the only contested issue under Rule 23(b)(3) — the predominance of common issues of reliance — plaintiffs only need to make some showing of the elements triggering the <u>Basic</u> presumption; if they succeed, <u>Basic</u> effectively relieves plaintiffs of the obligation to provide further evidence that common issues of reliance will predominate over individual issues. Thus, in comparison to what was required in <u>Visa Check</u> and <u>Caridad</u>, plaintiffs' burden is not particularly onerous, and plaintiffs can satisfy that burden without large amounts of evidence or detailed expert reports.

The Court also rejects any suggestion that plaintiffs' showing is fatally weakened by their heavy reliance on allegations in their complaint. While a plaintiff must make *some* showing beyond its complaint's allegations in order to satisfy Rule 23, <u>see</u> <u>Robertson Stephens</u>, 228 F.R.D. at 470, a complaint may form an important and useful part of a plaintiff's presentation to the Court at the class certification stage, particularly where, as here, the complaint contains detailed and particularized allegations, <u>cf</u>. <u>In re Salomon Analyst Metromedia Litig.</u>, 373 F.

Supp. 2d at 240 (holding that plaintiffs' claims regarding the credit facility were sufficiently particularized to survive defendants' motion to dismiss), and incorporates by reference documentary evidence in the record and public materials of which the Court may take judicial notice (see generally Complaint ¶¶ 108-43, 258-60).

(c) Plaintiffs' satisfaction of Basic's requirements

Plaintiffs have made an adequate showing that the Basic presumption will apply, and thus have shown for purposes of Rule 23(b)(3) that common issues of reliance will predominate.

There is, and can be, no dispute that Metromedia stock was actively traded on an open, developed, and generally efficient securities market, and that this element of the Basic inquiry is therefore satisfied. Nor can there be any dispute that the alleged misrepresentations were publicly made. The question of materiality may be more complicated, but having reviewed the parties' submissions, the Court concludes that plaintiffs have adequately shown a "substantial likelihood" that the alleged omission of truthful information about the credit facility in defendants' reports "would have been viewed by the reasonable investor as having significantly altered the total mix of information made available," Harkavy v. Apparel Indus., Inc., 571 F.2d 737, 741 (2d Cir. 1978) (citation and internal quotation marks omitted), and that plaintiffs have therefore made a sufficient showing of materiality. Defendants, in any event, make no serious argument that the alleged misrepresentations were immaterial. This is understandable in light of evidence in the record that defendants themselves publicly emphasized the importance to Metromedia of the $350 million credit facility that is the subject of the alleged misrepresentations.

Defendants' primary argument against applying the Basic presumption is that plaintiffs have not made an adequate showing that defendants' public statements regarding the $350 million credit facility actually had an effect on the value of Metromedia shares. (See, e.g., D. Mem. at 16-19.) An actual causal effect on market share price, however, is not an element that plaintiffs must prove in order to justify application of the Basic presumption of reliance. See Basic, 485 U.S. at 246-47. Indeed, under some interpretations of Basic, a causal relationship is *presumed* absent rebuttal. Cf. Hevesi, 366 F.3d at 77 ("The fraud-on-the-market doctrine, as described by the Supreme Court in Basic v. Levinson, creates a rebuttable presumption that (1) misrepresentations by an issuer affect the price of securities traded in the open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value."). Though some courts have concluded that in cases against analysts, as opposed to cases against issuers, plaintiffs must make a "*prima facie* showing" that the alleged misrepresentations "materially and measurably impacted the market price of the security," see, e.g., Lehman Bros., Inc., 222 F.R.D. at 247, this Court has declined to adopt that standard. See Robertson Stephens, 228 F.R.D. at 473-74; see also Hevesi, 366 F.3d at 79 (taking note of defendants' argument that the Basic presumption should not apply to analyst reports absent a finding that the analyst statements affected market prices, but declining to decide "what evidentiary showing, *if any*, the plaintiffs must make at the class certification stage in order to benefit from the Basic presumption in an action against research analysts" (emphasis added)). Defendants thus overstate what is required of plaintiffs at the Rule 23 stage.

Defendants' argument will of course come into play in assessing the merits of plaintiffs' arguments under Basic. Anything that "severs the link" between the alleged misrepresentations

and the price of the shares will rebut the <u>Basic</u> presumption.  <u>Basic</u>, 485 U.S. at 248.  Thus, if the

evidence at trial or on summary judgment indicates that the alleged misrepresentations here did

not affect the value of Metromedia shares during the class period, <u>Basic</u> would not apply.[11]

The Court will not consider the issue further at this stage, however, because any inquiry

into the matter would require the Court to weigh merits-related evidence, which the Second

Circuit prohibits this Court from doing at the class certification stage.  <u>Caridad</u>, 191 F.3d at 293.

For purposes of demonstrating common issues of reliance at this stage, all that matters is that

plaintiffs have made at least "some showing" that they are entitled to the <u>Basic</u> presumption, and

thus that common issues of reliance will predominate.  The fact that defendants might

successfully rebut the <u>Basic</u> presumption at a later stage in the litigation (when it is appropriate

to weigh merits-related evidence) does not undermine the propriety of certifying the class now.

The issue on this motion is not whether plaintiffs have proved their case on the merits, or even

whether their claims will survive summary judgment.  <u>See</u> <u>Robertson Stephens</u>, 228 F.R.D. at

475.  The issue is rather the preliminary procedural issue of whether those questions will be most

efficiently addressed on a class rather than an individual basis.[12]

---

[11]  At trial or on summary judgment, defendants' argument regarding the reports' effect
(or lack of effect) on market price will also be relevant to the question of loss causation.  <u>See</u>
<u>Dura Pharms.</u>, 544 U.S. at 341-42 (describing "loss causation, i.e., a causal connection between
the material misrepresentation and the loss," as a "basic element[]" of a securities fraud claim
(emphasis, citation and internal quotation marks omitted)).  Such loss causation issues, however,
will be common to the entire class, and therefore do not affect this Court's analysis under Rule
23(b)(3).

[12]  In any event, even if it were appropriate to consider at this stage defendants'
arguments regarding the lack of a causal relationship between their reports and the stock price,
the Court seriously doubts that those arguments would prevail.  As an initial matter, it is not
clear that defendants have actually attempted a rebuttal; they do not structure their arguments as
a rebuttal and they do not produce evidence to support their claim.  Rather, they argue that

B.  Superiority of the Class Action

The final question to be addressed under Rule 23(b) is whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs assert that a class action is superior to other available methods, and note in support that common proof will be used to establish liability, transaction and loss causation, and damages.  Plaintiffs also argue that class members "will have negative value claims if required to litigate their claims against Defendants on an individual basis, given the issues involved, the number of potential witnesses, and the tremendous resources available to Defendants."  (P. Mem. at 29.)  Defendants do not argue that alternative forms of litigation would be superior to a class action.  In light of all the circumstances, the Court concludes that plaintiffs have satisfied the "superiority" requirement of Rule 23(b)(3).  See also In re Indep. Energy Holdings PLC Secs. Litig., 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (noting that class action treatment is "particularly appropriate" for securities fraud claims, and under such

_____

plaintiffs' evidence and arguments do not demonstrate a causal relationship between defendants' reports and Metromedia's price.  As noted above, however, Basic and Robertson Stephens do not impose on plaintiffs the burden to affirmatively demonstrate such a causal relationship at this stage.

Moreover, defendants' attacks on plaintiffs' arguments and evidence are not particularly strong.  Defendants argue, for example, that plaintiffs' data on stock prices exaggerates the defendants' reports' effect, and that plaintiffs' methodology for calculating share price changes is in some cases indiscernible and in other cases flawed.  With respect to two out of the three reports discussed in detail in the briefs, however, defendants' conclusions regarding the change in share price after the release of a report do not differ sharply, if at all, from plaintiffs' conclusions.  For example, defendants attack plaintiffs' assertion that Metromedia stock dropped 38% after the release of defendants' July 25, 2001, negative report on the company, but defendants concede in a footnote that under their own calculations, the stock dropped almost 33% in the two days following the report's release.  (D. Mem. at 16 & n.4)  With respect to the June 6, 2001, positive report on Metromedia, defendants appear to accept plaintiffs' contention that the stock jumped 11% in the day after the report was issued.  (Id. at 17 n.14.)

circumstances courts should err in favor of certifying a class (citation and internal quotation marks omitted)).

IV. Certification of Class Counsel

Under Rule 23(g), a district court certifying a class must also appoint class counsel.  In appointing such counsel, the court must consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Id.  Here, plaintiffs seek to certify attorneys from three law firms as class counsel: Nix, Patterson & Roach LLP; Kaplan, Fox & Kilsheimer, LLP; and Patton, Roberts, McWilliams & Capshaw.

Having considered all relevant factors, the Court finds that the proposed class counsel satisfy the requirements of Rule 23(g).

## CONCLUSION

For the reasons discussed, the Court grants plaintiff Peter Carolan's motion for class certification and for appointment of proposed class counsel, and certifies Carolan as representative of the class.  Plaintiffs' motion to certify TAMC and Techgains I, II, III, IV, and V as class representatives is denied.

SO ORDERED.

Dated: New York, New York
     June 20, 2006

                                       GERARD E. LYNCH
                                 United States District Judge